UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEIDA HUKMAN,<br><br>                  Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO.,<br><br>                  Defendant. | Case No.: 18cv1204-GPC(RBB)<br><br>**ORDER DENYING MOTION TO QUASH SUBPOENA [ECF NO. 14]** |

Plaintiff Sheida Hukman has filed a motion to quash two subpoenas issued by Defendant Southwest Airlines Co. for the production of records relating to her medical condition [ECF No. 14]. For the reasons discussed below, the motion is DENIED.

### I.    BACKGROUND

Plaintiff, proceeding pro se, filed this action against her former employer, Defendant Southwest Airlines. (Notice Removal Attach. #2 Ex. A [state court compl.], at 2-19, ECF No. 1.)[1] Hukman identifies herself as "Middle Eastern of Kurdish descent from Iraq." (Id. at 2.) In May 2016, Plaintiff interviewed with Southwest for the position of customer service supervisor. (Id. at 3-4.) She contends she did not receive the

---

[1] The Court cites to documents as paginated on the electronic case filing system.

1

position because of her national origin.  (Id. at 4.)  Southwest instead hired Plaintiff as a customer service agent.  (Id. at 3.)  Hukman alleges she was subjected to various forms of discrimination and harassment during her employment with Southwest.  (Id. at 6.)  She claims that Southwest employees purposely ordered her the wrong size uniform, restricted her from ordering certain uniform items, and did not assign a trainer to work with her even though Southwest assigned trainers to other new hires.  (Id. at 5-6.)  Plaintiff states that during her fourth week, while in Dallas-Fort Worth for training, the instructor looked at her in a "threatening, humiliating manner" every time the instructor mentioned "terrorist."  (Id. at 6.)  Plaintiff alleges Southwest ignored her complaints of discrimination and harassment, retaliated against her, and allowed its employees to continually harass and intimidate her.  (Id.)  Hukman claims a Southwest employee called her "'Shish Kabob', [sic] because Of her National Origin Iraq."  (Id. at 7.)  She also states that she received threats that her probationary employment would be terminated because she had made inquiries about the uniform policy and because she had sought court protection from flight attendant Laura Williams-Anderson.  (Id. at 7-8.)[2]  According to Hukman, the employee relations staff never contacted her about her complaints.  (Id. at 8.)  Plaintiff alleges she continued to be called "Shish Kabob" [sic], and a manager who saw her using her airport badge told Hukman, "It's all green at this point.  I am waiting for the day that, you cannot swipe your badge and goes Red, HaHaHaHa."  (Id. at 8-9.)

     Plaintiff received a performance review on September 24, 2016.  (Id. at 9.)  She claims she received a good evaluation, but was told she could leave the company if she was dissatisfied with the uniform policy.  (Id.)  She was also informed she could not mention other airlines' benefits and duties.  (Id.)  Hukman refused to sign the evaluation and contends the statement about other airlines was made in retaliation for her complaints

---

[2] Plaintiff states that she worked for US Airways/American Airlines ("US Airways") from 2007 until 2015.  (Mot Quash. 4, ECF No. 14.)  While employed at US Airways, Plaintiff reported Ms. Williams-Anderson to management for asking other employees to "smuggle [Williams-Anderson] inside the aircraft without listing her in the manifest."  (Id.)

of harassment and discrimination. (Id.) She asserts that her mention of other airlines was made in good faith, and Southwest "cannot prohibit individuals [f]rom talking in good [f]aith." (Id.) Plaintiff alleges that the following day, while she was working at the express baggage drop, supervisors mocked her accent and harassed her because of her refusal to sign the evaluation. (Id. at 9-10.) One of the supervisors asked Plaintiff to work faster, and pointed a large fan toward her back. (Id. at 10.) Hukman contends that the supervisor "Was Treating the Plaintiff like Slaves." (Id.) On September 26, 2016, Southwest terminated Plaintiff's employment. (Id. at 10-11.)

Plaintiff asserts eight overlapping state and federal claims against Defendant: discrimination, retaliation, failure to hire her as a supervisor, improper training, and harassment in violation of Title VII of the Civil Rights Act of 1964. (Id. at 3.) In addition, she complains of retaliation and a failure to stop discrimination and harassment in violation of the California Fair Employment and Housing Act (California Gov't Code §§ 12940, et seq.), (id. at 3, 15), and wrongful termination in violation of California public policy, (id. at 3). Hukman seeks job reinstatement, back pay and benefits, punitive damages, moving expenses, and compensatory damages for emotional pain and suffering, loss of reputation, and loss of future earnings. (Id. at 16-17.) Southwest filed an answer to Plaintiff's complaint. (Id. Attach. #3 Ex. B [state court answer], at 2-14.)

On December 12, 2018, Defendant served a subpoena to produce documents upon the custodians of records for Dr. Karen Cruey and Dr. Gregory P. Brown, requesting the production of medical records relating to Hukman. (Mot. Quash Attach. #1 Exs. 1 & 2 [subpoenas], at 1-12, ECF No. 14.) Plaintiff filed the motion to quash the subpoenas on December 31, 2018 [ECF No. 14]. On January 2, 2019, the Court issued a briefing schedule on the motion and ordered the custodians of records to stay compliance with the subpoenas pending further order of the Court [ECF No. 15]. Defendant filed an opposition to Plaintiff's motion on January 16, 2019 [ECF No. 16]. On January 23, 2019, Hukman filed a reply [ECF No. 17].
//

The Court finds the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1.

## II. LEGAL STANDARDS

Rule 45 of the Federal Rules of Civil Procedure governs discovery of nonparties by subpoena. See Fed. R. Civ. P. 45. A nonparty witness is subject to the same scope of discovery under Rule 45 as is a party under Rule 34. See Fed. R. Civ. P. 45 advisory committee note to 1970 Amendment. Under Rule 34, the rule governing the production of documents between parties, the proper scope of discovery is as specified in Rule 26(b). See Fed. R. Civ. P. 34(a). Rule 26(b), in turn, permits the discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." See id. R. 26(b)(1). Relevance, for purposes of discovery, is defined broadly and "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Id.; see also Shoen v. Shoen, 5 F.3d 1289, 1292 (9th Cir. 1993) (stating that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth).

Under Rule 45, a third party served with a subpoena may serve objections to the subpoena within fourteen days after service or before the time for compliance if less than fourteen days. Fed. R. Civ. P. 45(d)(2)(B). On timely motion, the court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or that "subjects a person to undue burden." Id. R. 45(d)(3)(A)(iii) & (iv). The party moving to quash or modify a subpoena bears the burden of showing the subpoena should be quashed or modified. 9 James Wm. Moore et al., Moore's Federal Practice ¶ 45.50[2] (3d ed. 2017) (citing cases). The party issuing the subpoena must demonstrate the discovery sought is relevant. Fujikura Ltd. v. Finisar Corp., Case No. 15-mc-80110-HRL (JSC), 2015 WL 5782351, at *3 (N.D. Cal. Oct. 5, 2015) (citation omitted).

//
//

## III. DISCUSSION

Plaintiff seeks an order quashing the subpoenas served by Defendant upon Dr. Cruey and Dr. Brown. (Mot. Quash 1, ECF No. 14.) In December 2012, during her previous employment with US Airways, management suspended Plaintiff's employment following an incident between Plaintiff and a pilot and a flight attendant of Republic Airways. (See id. at 5-6; Def.'s Opp'n Attach. #1 Garrett Decl. Ex. A [Hukman Dep. (Nov. 28, 2018)], at 5-6, ECF No. 16.) US Airways requested that Plaintiff undergo an independent medical examination with Dr. Cruey pursuant to a collective bargaining agreement. (Mot. Quash 6, ECF No. 14; Pl.'s Reply Attach. #2 [Letter from Amy Rose, attorney for Sheida Hukman, to Erin Borg, general counsel for US Airways (Apr. 9, 2013)], at 6-7, ECF No. 17.) Plaintiff saw Dr. Cruey once, in January 2013. (Def.'s Opp'n Attach. #1 Hukman Dep. 13-14, ECF No. 16.) Dr. Cruey did not release Plaintiff to return to work and recommended she receive psychotherapy treatment. (Id. at 8-9, 13-14.) Plaintiff subsequently sought an evaluation from Dr. Brown. (Pl.'s Reply 5, ECF No. 17.) Hukman states that Dr. Brown, whom she saw only once, disagreed with Dr. Cruey's assessment. (Id.; Def.'s Opp'n Attach. #1 Hukman Dep. 18, ECF No. 16.)

### A. Relevance

Plaintiff contends the subpoenaed records bear no relevance to this action because they are "not going to change the facts and the causes of action, the [d]iscrimination and [r]etaliation that was done by Southwest Airlines" and its employees. (Mot. Quash. 3, ECF No. 14.) She states she has never had any issues with passengers or co-workers, does not have a record of violence, and does not have any preexisting mental health issues. (Pl.'s Reply 6, 9, ECF No. 17.) Defendant argues the records of Dr. Cruey and Dr. Brown are relevant to its after-acquired evidence defense and to Hukman's claim of emotional distress. (Def.'s Opp'n 9-12, ECF No. 16.)

Under the "after-acquired evidence" doctrine, an employee's remedies for wrongful discharge are precluded or limited if the employer later discovers evidence of wrongdoing that would have led to the employee's termination if the employer had

known of the misconduct. McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 360-63 (1995). In order to rely on the defense, the employer must prove by a preponderance of the evidence that it would have fired the employee for the misconduct. O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756, 761 (9th Cir. 1996). Here, Defendant contends that during Plaintiff's recent deposition, it obtained after-acquired evidence that Hukman misrepresented her former employment with US Airways on her job application with Southwest. (Def.'s Opp'n 10, ECF No. 16.) Southwest argues that in her application, Plaintiff certified that she had worked for US Airways from 2007 to 2015 and resigned from her position to relocate to Las Vegas. (Id.) In her deposition, however, Plaintiff testified that Dr. Cruey found she was not fit to return to work at US Airways following her December 2012 suspension and further testified that she was on a leave of absence from US Airways from 2013 to 2015. (Def.'s Opp'n Attach. #1 Hukman Dep. 5-6, 10-11, 20, ECF No. 16.) She also stated that she was not released to go back to work by any doctor. (Id. at 15.) Hukman's job application with Southwest, completed in 2016, makes no mention of her suspension from US Airways, her inability to return to work, or her leave of absence. (Id. at 29-30.) Former employment records are relevant to the after-acquired evidence defense in Title VII employment discrimination cases. Guitron v. Wells Fargo Bank, N.A., No. C 10-3461 CW (MEJ), 2011 WL 4345191, at *2 (N.D. Cal. Sept. 13, 2011). Because Dr. Cruey's and Dr. Brown's records arose out of Plaintiff's former employment with US Airways and bear upon Plaintiff's fitness to work as well as the representations on her Southwest job application, they are clearly relevant to Southwest's after-acquired evidence defense.

  Defendant contends the subpoenaed records are also relevant to Plaintiff's claimed emotional distress damages, the cause of her emotional distress, and whether any preexisting conditions contributed to her interactions at work and her perceptions of those interactions. (Def.'s Opp'n 10-12, ECF No. 16.) A plaintiff who elects to seek damages for emotional distress relies on her emotional condition as an element of her claim. Doe v. City of Chula Vista, 196 F.R.D. 562, 568 (S.D. Cal. 1999). Once a plaintiff has

elected to seek such damages, she cannot fairly prevent discovery relating to that element of her claim. Id. at 569. Moreover, "to insure a fair trial, particularly on the element of causation," defendants should have access to evidence that the plaintiff's emotional state was caused by something else. Id. "Defendants must be free to test the truth of [the plaintiff's] contention that she is emotionally upset *because of* the defendants' conduct." Id.; see also Tatum v. Schwartz, No. CIV S-06-1440 RRB EFB, 2007 WL 1725479, at *2 (E.D. Cal. June 14, 2007) (permitting employer to "seek to discover evidence regarding other stressors in plaintiff's life that may have contributed to her alleged emotional distress[]").

Although Plaintiff claims she did not have any preexisting mental health problems, (see Pl.'s Reply 9, ECF No. 17), Defendant is entitled to discovery to confirm this, particularly because information in the record provided by Plaintiff shows that a psychiatrist, Dr. Cruey, found her unable to safely perform her job duties, (Def.'s Opp'n Attach. #1 Hukman Dep. 11, 13, ECF No. 16; Pl.'s Reply Attach. #2 [Letter from Amy Rose, attorney for Hukman, to Erin Borg, general counsel for US Airways (Apr. 9, 2013)], at 7, ECF No. 17). Additionally, with respect to Plaintiff's multiple arguments that Dr. Cruey's examination was improperly obtained and conducted, (see Mot. Quash 6-7, ECF No. 14; Pl.'s Reply 2, 5, 6, ECF No. 17), discoverability, not admissibility, is presently at issue. Plaintiff's relevancy objections, which go to the weight to be ascribed to this evidence rather than its discoverability, may be more properly asserted once the evidence is actually offered in these proceedings. The Court finds the medical records from Dr. Cruey and Dr. Brown are relevant to Plaintiff's claim of emotional distress, whether Southwest's alleged conduct was the sole cause of Plaintiff's mental distress, and whether Plaintiff's emotional condition affected her employment at Southwest.

### B. Privacy Rights

Plaintiff contends that production of Dr. Cruey's and Dr. Brown's records would violate her right to privacy. (Mot. Quash 7, ECF No. 14.) Privacy rights in medical records are neither fundamental nor absolute. Larson v. Bailiff, No. 13CV2790 BAS

(JLB), 2015 WL 4425660, at *5 (S.D. Cal. July 17, 2015). When a plaintiff places her medical condition at issue, her expectation of privacy regarding those conditions is diminished. Id. (citation omitted). The court must balance the right to discovery against the patient's right to maintain private medical records. Soto v. City of Concord, 162 F.R.D. 603, 619 (N.D. Cal. 1995). Here, as discussed above, not only has Plaintiff placed her emotional health at issue, but her preexisting emotional condition is highly relevant to her fitness to work as well as causation. Defendant's interest in obtaining this relevant discovery outweighs Hukman's privacy concerns. Thus, the records must be produced.[3]

## IV. CONCLUSION

For the reasons discussed above, Plaintiff's Motion to Quash Subpoena [ECF No. 14] is DENIED. Accordingly, the Court lifts the previously imposed stay of compliance with the subpoenas. (See Jan. 2, 2019 Mins., ECF No. 15.) The custodians of records for Dr. Karen Cruey and Dr. Gregory P. Brown are to produce the requested items within ten business days of being provided with notice or a copy of this order.

**IT IS SO ORDERED**.

Dated: February 12, 2019

Hon. Ruben B. Brooks
United States Magistrate Judge

---

[3] The parties can enter into a protective order to ensure Plaintiff's privacy interests are respected and maintained.

8
18cv1204-GPC(RBB)